LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com


Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALISON AROCHO<br>730 Fifth Street<br>Marietta, Ohio 45750,<br><br>          Plaintiff,<br><br>   *vs*.<br><br>OHIO UNIVERSITY<br>1 Ohio University,<br>Athens, Ohio 45701<br><br>          Defendant. | Case No.<br><br>**COMPLAINT**<br><br><br><br>Judge ----------------<br>Magistrate Judge --------------<br><br>JURY TRIAL DEMANDED |

Now Comes Plaintiff, Alison Arocho ("Plaintiff Arocho")," by and through her undersigned attorney, Michael L. Fradin, to bring this action against Ohio University and alleges as follows:

## I.      **INTRODUCTION**

1.     This case arises from the events that occurred during Plaintiff Alison Arocho's childhood, primarily while she was a student in the Federal Hocking Local School District, and also while she was a participant in educational events operated in conjunction with Defendant

Ohio University. Over a period of many months, and in the course of performing his job duties for his employer (Defendant Ohio University), Robert Andrew Parsons sexually abused Plaintiff Arocho, a minor.

2. The claims made in this suit result from childhood sexual abuse, as defined by R.C. 2305.111(C).

3. Parsons directly abused Plaintiff while she was still a minor, after Defendant Ohio University had actual notice of Parsons history of abuse of other minor children as well as after Defendant Ohio University had actual notice of his abuse of Plaintiff. Defendant Ohio University fostered a safe space for sexual misconduct that empowered Parsons to confidently abuse his authority and victims, specifically Plaintiff Arocho, without fear of reprimand.

4. Despite Ohio University being on notice in 2000-2001 that Robert Andrew Parsons was accused of gender based misconduct involving a minor, Parsons was permitted to have sexual contact with Plaintiff while Parsons was "on the clock" and on campus, including inside his police cruiser.

5. Parsons was permitted to stalk Plaintiff and other minor women while "on the clock" and under state authority.

6. Parsons also sexually abused Plaintiff on Ohio University's Campus after Ohio University was put on notice that Parsons was being investigated for sexual misconduct involving Plaintiff.

## II. PARTIES

### A. Plaintiff

7. Plaintiff Alison Arocho is a female and a resident of Athens County located in the State of Ohio. Alison's maiden name is Cline.

**B. Defendants**

8.     Defendant Ohio University is a public educational institution established and operated by the State of Ohio, with its principal place of business located in Athens, Ohio 45701. Defendant Ohio University conducts business in Athens, Ohio.

### III.     JURISDICTION AND VENUE

9.     This case arises under the laws of the United States, specifically United States, specifically Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et. seq. and 42 U.S.C. § 1983.

10.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391. The Defendant is a resident of the State in which this district is located and a substantial part of the events or omissions giving rise to the claims occurred in this district.

### IV. GENERAL ALLEGATIONS

*Parsons' Sexual Abuse of Plaintiff Arocho*

11.     At all relevant times, Robert Andrew Parsons was employed by Defendant Ohio University within the Ohio University Police Department as a police officer.

12.     In 2005, Parsons initiated an illegal and abusive sexual relationship with Plaintiff Arocho (as well as at least two other minors) that he interacted with through the course of his employment with Defendant Ohio University.

13.     On multiple occasions, Parsons raped Plaintiff during Parsons' work hours and at work-related locations.

14.     On multiple occasions, Parsons raped Plaintiff Arocho in Parsons' Ohio University issued police cruiser.

15.     On at least one occasion, Parsons raped Plaintiff Arocho on or around the premises of his employer, Defendant Ohio University.

16.     One specific occasion occurred during Federal Hocking' High School's 2005-2006 academic year,  Parsons arranged for Plaintiff Arocho to meet him in uptown Athens, near the Buffalo Wild Wings restaurant and bar. Parsons specifically asked Plaintiff Arocho to meet him so that he could coach her on what to tell investigators who he knew would be questioning her about the abuse.  After coaching her on what to say, he proceeded to rape her.

17.     That particular rape occurred in early December inside a Ohio University owned building which was locked but for which Parsons still had Ohio University issued keys and access. Parsons opened the building with his work keys and raped the minor Plaintiff inside the University-owned building.

18.     On at least one occasion, Parsons engaged in unlawful sexually abusive behavior toward Plaintiff Arocho on or around the premises of Federal Hocking High School.

19.     On at least one occasion, Parsons engaged in unlawful sexual misconduct with Plaintiff Arocho while Plaintiff Arocho was participating in an educational event partially operated by Defendants Ohio University and Ohio University Police Department.

20.     During the 2005-2006 academic year, Defendants Ohio University and Ohio University Police Department sent, or negligently permitted, or deliberately indifferently allowed Parsons to travel to the school that Plaintiff Arocho attended so that Parsons could participate in a "career day."

21.     While the stated purpose of the career day was for Parsons and other officers to engage in community interface with Federal Hocking High School students who might be interested in pursuing a law enforcement career, Parsons used the event to make inappropriate

communications of a sexual nature with Plaintiff Arocho. During this Ohio University and Ohio University Police Department sanctioned event, Parsons made plans to have sex with Plaintiff Arocho, a minor, later that evening. Parsons was wearing his Ohio University Police Department issued uniform at the time of these interactions and was "on the clock" as an Ohio University employee.

### Defendant Ohio University's Deliberate Indifference

22.     Defendant Ohio University was deliberately indifferent to Parsons history of sexual abuse of minors, including Plaintiff Arocho, and was deliberately indifferent in their response to reports concerning Parsons' sexual abuse of minors.

23.      On multiple occasions, Parsons used work facilities and devices to have unlawful communications with Plaintiff Arocho.

24.     Parsons sent nude photographs of himself to Plaintiff Arocho and then had her send nude photographs back to him. Parsons engaged in these communications during Ohio University work hours with his Ohio University work computer.

25.     Defendant Ohio University allowed Parsons to continue his employment even after Ohio University officials received notice of the sexual abuse he was committing against Plaintiff Arocho and other minors.

26.     Ohio University officials had actual knowledge of an initial report from the Athens County Department of Children's Services concerning Parsons' inappropriate gender based misconduct involving a minor in 2000-2001.

27.     The 2000-2001 misconduct allegations against Parsons were similar to the misconduct that is the subject matter of this lawsuit.

28. Parsons' 2000-2001 misconduct was never reported to or investigated by Ohio University's Office of Equity and Civil Rights Compliance (ECRC) (previously known as the Office for Institutional Equity).

29. Despite officials at Ohio University being on notice of multiple accusations against Parsons of sexual abuse, no person at Ohio University reported Parsons' misconduct to the Office of Institutional Equity

30. Despite Ohio University officials being on notice that Parsons was accused of sexual misconduct involving a minor dating back to 2000-2001, in or around November, 2005, Ohio University assigned Parsons to attend a career day event at Plaintiff Arocho's school, Federal Hocking Secondary School, during which he continued to inappropriately interact and communicate with Plaintiff Arocho, going so far as to schedule a meet-up for sex later that evening.

31. Defendant Ohio University designated Parsons to attend a career day at Arocho's high school after officials at the University had actual notice that Parsons had been investigated by Athens County Department of Children's Services in 2000-2001 for sexual misconduct involving a minor.

32. According to investigation notes obtained by Plaintiff from Ohio University, the allegations against Defendant Parsons in 2000-2001 were noted by an Ohio University official to be of an "exact same" and of an "exact similar" nature as the allegations that were investigated related to the sexual abuse of Plaintiff. Exhibit A is a true and accurate copy of a page from the Ohio University's investigation related to the abuse of Plaintiff.

33. According to a January 10, 2006 Request for Pre-Disciplinary Hearing letter from then Director of Campus Safety, Tony Camechis, to then Assistant Vice President for

Administration for Human Resources, James Kemper, Lt. Travis Potts interviewed Parsons in connection with a "similar allegation" against Parsons in 2000-2001. According to the letter, the result of the 2000-2001 incident was that Parsons was "reminded of the importance of notifying a supervisor when your actions may bring recognition to Ohio University and the Ohio University Police Department."

34. Ohio University never cleared or internally resolved the 2000-2001 allegations that Parsons was sexually pursuing a minor female.

35. Between 2001 and 2006, Parsons was often unaccounted for during work hours. During these times, Parsons was often stalking, interacting with, or having inappropriate sexual contact with minor females.

36. Attached as Exhibit C is a letter that Parsons gave, during work hours, to a minor high school student, Rachel Chiki, when Chiki was in a work/study program at Ohio University.

37. Parsons, in his police uniform and cruiser, often stalked and followed Chiki, who would leave high school during the day to work at Ohio University as part of the Ohio Work Education (OWE) program.

38. In the note to Chiki, Parsons indicated to the minor student that his car would not be hard to find, in reference to his police cruiser.

39. Jill Dorfman, an Athens County Child Protective Services Coordinator and sexual abuse investigator, interviewed Plaintiff Arocho concerning the sexual relationship between her and Parsons on three different dates during November and December, 2005.

40. Upon information and belief, the dates these interviews occurred were November 17, 2005, December 8, 2005, and December 16, 2005. Upon information and belief, during this

time period, Jill Dorfman was also conducting interviews with several other Parsons' victims, who were also minors.

41.     On or about December 1, 2005, the Ohio University Police Department's Police Chief was notified by the Athens County Sheriff's Department that Parsons was under investigation for sexual misconduct involving minors and that Parsons was aware that he was under investigation for sexual misconduct involving minors since November 22, 2005.

42.     On or around December 2, 2005, Jill Dorfman interviewed Parsons and notified Defendant Ohio University Police Department of the nature of the ongoing investigation of Defendant Parsons, and that he was a danger to minors.

43.     Parsons continued active employment with Defendant Ohio University even after Jill Dorfman notified Defendants that, in all likelihood, Parsons had carried on at least one unlawful and abusive sexual relationship with a minor (or minors), and used his position of authority to do so.

44.     Parsons continued to contact and communicate with Plaintiff Arocho after Defendant Ohio University began their own investigation.

45.     One purpose of Parsons' communications with Plaintiff Arocho (and others around her) was to influence, manipulate, and ultimately coach the responses they would give when questioned by investigators about his sexual abuse of minors, including Plaintiff Arocho.

46.     Parsons concocted a story involving Plaintiff Arocho, her sister, and himself to explain away the communications between himself and Arocho.

47.     Because Plaintiff Arocho's sister was over eighteen years old at the time of Ohio University's investigation of the abuse of Arocho, Parsons attempted to coax Plaintiff Arocho

and her sister to lie to investigators and state that the sexual relationship was actually between Plaintiff's sister and Defendant Parsons.

48.     Parsons contacted Plaintiff and her sister multiple times a day over the course of the investigation in an attempt to coach Plaintiff and her sister on this story.

49.     After getting Plaintiff Arocho and her sister to lie to investigators, Defendant Parsons then threatened them by telling them that they could get in trouble for lying or making false statements to the investigators, who he had just pressured them into lying to.

50.     Parsons read the actual interview reports to Plaintiff Arocho and her sister of what Plaintiff Arocho had told investigators *after* the interviews and then coached them into adjusting their stories based off of what was in the reports.

51.     Not only is it unreasonable, considering the 2000-2001 allegations of sexual misconduct involving a minor, that Parsons was permitted to rape Plaintiff in his police cruiser and at various other locations, including inside locked Ohio University buildings, when he was "on the clock" as an officer for Ohio University as the "Officer Friendly" liaison to Federal Hocking High School, but it is unreasonable that Parsons had direct access to sensitive materials related to an investigation of himself for the sexual abuse of a minor.

52.     Parsons' coaching of Plaintiff Arocho and her sister was so intensive that he even coached them, verbatim, on the questions that would be asked by The Ohio Department of Children Services.

53.     Despite the fact that Parsons was being investigated by Defendants Ohio University and Ohio University Police Department for the sexual abuse of at least one minor (Plaintiff Arocho) and having sexually explicit communications with other minors, Parsons was, during the course of the investigation, allowed by Defendant Ohio University to keep a set of

work keys and access to campus and other privileges that enabled Parsons to contact Plaintiff Arocho, influence the investigation, and continue his abuse.

54.     Ohio University's inaction and unwillingness to restrict  Parsons' work-related access and privileges while he was being investigated for having sex with minors *only* enabled Parsons to more aggressively seek out, contact, and exert influence over his victims, especially Plaintiff Arocho.

55.     Defendant Ohio University did not terminate Parsons' employment until at least the final week of February, 2006. This was, at least, well over two months after they received notice of Parsons' sexual abuse of Plaintiff Arocho (a minor) on December 1, 2005.

56.     Defendants' deliberate indifference to the notice that the Ohio County Sherriff's Department and Jill Dorfman gave them regarding Parsons' sexual abuse of minors, along with their failure to discipline, reprimand, or revoke privileges from Parsons so that he was less able to victimize and abuse Plaintiff, directly contributed to the harm that Plaintiff has suffered.

57.     At the proximate time Parsons' abuse was taking place, Defendant Ohio University made public statements to local area media in which they claimed they terminated Parsons' employment as soon as they knew he was under investigation (by Athens County Child Services) for engaging in sexual relationships with minors, but this was obviously untrue.

## V.     CLAIM FOR RELIEF

### TITLE IX

58.     Plaintiff Arocho realleges and incorporates by this reference each of the preceding paragraphs as if fully set forth herein.

59.     Ohio University receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.

60.     At all relevant times, Parsons was an employee of a publicly-funded educational institution.

61.     During time periods of the sexual abuse, Plaintiff was a participant in a vocational program/relationship between Ohio University/Ohio University Police Department and Federal Hocking High School.

62.     Parsons engaged in the above-described unlawful sexual relations with the minor Plaintiff after appropriate officials at Ohio University had actual notice that Parsons was accused of sexual abuse of Plaintiff as well as sexual misconduct involving a minor female as far back as 2000-2001.

63.     Parsons was allowed to stalk and harass minor females, including Plaintiff, during work hours and in his police cruiser and on Plaintiff's high school campus during Parsons work hours even though Ohio University was on actual notice that Parsons was accused of sexual misconduct of a minor in 2000-2001.

64.     The appropriate officials failed to take corrective action to prevent Parsons from continuing to engage in gender based misconduct.

65.     Parsons had sexual contact with Plaintiff after the officials at Ohio University had actual notice of Parsons prior sexual misconduct with minor females, including Plaintiff.

66.      The sexual misconduct that occurred after appropriate officials had actual notice occurred in the course of Parsons' employment with Defendants.

67.     Parsons used his authority granted by Ohio University's vocational education relationship with Federal Hocking High School to continue to sexually abuse Plaintiff.

68.     As a direct and proximate result of Defendants Title IX violations', Plaintiff Arocho has suffered, and continues to suffer great pain of mind and body, shock, emotional

distress, physical manifestations of emotional distress, permanent disability, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; has and will incur attorneys' fees and court costs and other expenses, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## VI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a.  Compensatory damages on each claim set forth in the Complaint in excess of $10,000,000.00 per claim, to reflect the value of the damages Plaintiff sustained and has had to live with since the sexual abuse described in the Complaint took place;

b.  Punitive damages in an amount to be determined at trial;

c.  Plaintiff's reasonable attorneys' fees and costs of this action; and

d.  Such additional relief as the Court deems just and equitable.

DATED: October 28, 2019                                    Respectfully submitted,

**PLAINTIFF DEMANDS TRIAL BY JURY**

s/ *Michael L. Fradin*
Attorney for Plaintiffs

LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com